UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTINA NICHOLAS,<br><br>        Plaintiff,<br><br>  -against-<br><br>ENGEL ENTERTAINMENT, INC. and STEVEN M. ENGEL, individually,<br><br>        Defendants. | Civil Case No.:<br><br>1:26-cv-6765<br><br>**<u>COMPLAINT</u>**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff CHRISTINA NICHOLAS ("Plaintiff"), by and through her attorneys, STEVENSON MARINO LLP, as and for her Complaint against ENGEL ENTERTAINMENT, INC. ("Engel Entertainment") and STEVEN M. ENGEL, individually ("Mr. Engel") (collectively, "Defendants"), alleges upon knowledge as to herself and her own actions, and upon information and belief as to all other matters, as follows:

**<u>NATURE OF THE CASE</u>**

1. This is a civil action for damages and equitable relief based upon Defendants' willful violations of Plaintiff's rights guaranteed to her by: (i) the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a); (ii) the overtime provisions of the New York Labor Law ("NYLL"), NYLL § 160 et seq., and New York Comp. Codes R. & Regs ("NYCRR") Tit. 12, § 142-2.2; (iii) the NYLL's requirement that employers furnish employees with wage notices upon hire containing specific categories of accurate information, NYLL § 195(1); (iv) the NYLL's requirement that employers furnish employees with wage statements containing specific categories of accurate information on each payday, NYLL § 195(3); (v) one of the anti-retaliation provisions of the NYLL, NYLL § 215; (vi) the anti-retaliation provisions of New York City's Freelance Isn't Free Act ("FIFA"), NYC Admin. Code § 20-928 et seq.; and (vii) in the alternative

to the claims set forth in (i) and (ii) above, the payment and contract provisions of FIFA, NYC Admin. Code § 20-927 et seq.; and (viii) any other cause(s) of action that can be inferred from the facts set forth herein.

## PRELIMINARY STATEMENT

2.    Defendant Engel Entertainment, Inc. is a New York City-based media production company that has operated continuously since 1995, producing hundreds of hours of television, digital, streaming, and documentary programming. Its most recent venture, The Game Warden Channel, grew under Plaintiff's leadership from early concept to an established brand with over 100,000 subscribers.

3.    Despite the critical and wide-ranging nature of the work Plaintiff performed, Defendants systematically denied her the rights and protections to which she was entitled by law.

4.    Plaintiff served as Engel Entertainment's Chief Business Development Officer for nearly two years, working five to seven days per week, routinely into the evenings and on weekends and holidays, at the direction of Defendants and pursuant to a schedule and set of responsibilities that Defendants controlled at every level. She was provided with a company-issued laptop, a corporate American Express card, a company email address, paid holidays, and access to employee bonus pools. She was designated the sole "Key Person" under the parties' written agreement and was prohibited from delegating her work to anyone else. In short, every hallmark of employment was present.

5.    Yet Defendants labeled Plaintiff an "independent contractor" and compensated her through her single-member LLC, Chroma Collective LLC, paying her a fixed fee of $600 per day without ever paying overtime, and without ever providing her with the wage notices and wage statements required by law. The Company's decision to misclassify Plaintiff served only one

purpose: to avoid the legal obligations owed to employees, including overtime pay, employment taxes, and wage-notice protections.

6. As if their wage theft were not enough, Defendants retaliated against Plaintiff for the simple act of demanding that she be paid for the work she had already performed. After Plaintiff raised written demands for payment of outstanding invoices on May 26, May 27, June 2, June 3, June 5, and the morning of June 11, 2026, Defendants terminated the relationship that very same evening, on June 11, 2026, without addressing a single outstanding invoice. The temporal proximity between Plaintiff's complaints and Defendants' swift termination makes clear what motivated that decision.

7. Plaintiff brings this action to vindicate her rights under the FLSA, the NYLL, and FIFA, and to ensure that Defendants are held accountable for the wages and damages they unlawfully withheld.

## JURISDICTION AND VENUE

8. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. § 201, et seq. The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all claims arising under New York State and New York City law.

9. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims for relief occurred within this judicial district, and pursuant to 28 U.S.C. § 1391(b)(1), as Defendant Engel Entertainment resides within this judicial district.

## PARTIES

10. At all relevant times herein, Plaintiff Christina Nicholas was and is an individual who is a citizen and resident of Kings County, New York, and was an "employee" entitled to the

3

protections as defined by the FLSA, the NYLL, and the NYCRR, or, in the alternative, a "freelance worker" entitled to the protections of FIFA.

11.    Defendant Engel Entertainment, Inc. is a company with its principal place of business located at 41 Madison Avenue, 41st Floor, New York, New York 10010. Engel Entertainment owns, operates, and manages a television, digital, streaming, video, film, and related programming and production company that has operated continuously since 1995 with hundreds of hours of programming and feature documentaries.

12.    At all relevant times herein, Defendant Engel Entertainment was and is an "employer" within the meaning of the FLSA. Defendant is engaged in interstate commerce within the meaning of the FLSA, as it employs two or more individuals, generates at least $500,000.00 in annual revenue, and produces and distributes programming across the United States and through digital and streaming platforms, receives advertising and sponsorship payments from entities across state lines, and conducts business operations that regularly cross state lines, thereby subjecting Defendant to the FLSA's overtime requirements.

13.    At all relevant times herein, Defendant Engel Entertainment was and is an "employer" within the meaning of the NYLL, and Plaintiff was and is an "employee" within the meaning of the NYLL.

14.    Defendant Steven M. Engel is a resident of New York who, at all times relevant to this Complaint, served as the President and controlling officer of Engel Entertainment. Mr. Engel had and exercised the authority to hire and fire employees, determine rates and methods of pay, set work assignments, and otherwise control the terms and conditions of Plaintiff's employment. Mr. Engel is therefore an "employer" within the meaning of the FLSA and the NYLL, and a "hiring

party" within the meaning of FIFA, individually as well as in his capacity as an officer of Engel Entertainment.

## BACKGROUND FACTS

### *Engel Entertainment and Its Business*

15.    Defendant Engel Entertainment, Inc. is a media production company that has operated continuously since 1995, producing hundreds of hours of television, digital, streaming, and documentary programming. Engel Entertainment's stated business is "television, digital, streaming, video, film and related programming and promotion."

16.    Engel Entertainment's most recent and active venture is The Game Warden Channel ("GWC"), a digital and streaming channel covering conservation, wildlife, and law enforcement programming. The GWC launched in July 2025 and had grown to over 100,000 subscribers by the time Defendants terminated Plaintiff's engagement.

17.    Mr. Engel served at all relevant times as the President, CEO, and Executive Producer of Engel Entertainment, and personally directed, supervised, and oversaw Plaintiff's work throughout the duration of her engagement.

### *Defendants' Engagement of Plaintiff and the Terms of Her Compensation*

18.    Beginning on or about September 30, 2024, Defendants engaged Plaintiff to serve as the Chief Business Development Officer of Engel Entertainment, Inc. Her email signature identified her as holding that title, and Engel Entertainment's own internal staffing records listed her as filling that role.

19.    Plaintiff began performing services at Defendants' direction on September 30, 2024, the effective date of the parties' written agreement. Notably, Engel Entertainment did not

sign the written agreement until December 4, 2024, more than two months after Plaintiff had already begun performing services.

20.    Although the parties' written agreement was titled "Independent Contractor Agreement" and designated Plaintiff's LLC, Chroma Collective LLC, as the nominal contracting party, the economic reality of the relationship was one of employment, and the Company itself referred to Plaintiff's compensation as "executive style."

21.    Pursuant to the written agreement, Defendants paid Plaintiff a fixed fee of $600 per day, to be paid on a bi-weekly basis within fourteen days following each invoice due date. The agreement also provided that after six months, Engel Entertainment would review the compensation structure and consider an upward adjustment; that review was never conducted.

22.    The agreement contained no restrictions or provisions prohibiting Plaintiff from working overtime or submitting additional billing for additional days or hours worked each week.

23.    Throughout Plaintiff's engagement with Defendants, she billed for all time worked, including additional hours worked beyond forty in a week, until Defendants directed her to discontinue billing for this time as described below.

24.    In addition to the fixed daily fee, the written agreement expressly provided that Plaintiff would be entitled to participate in any and all employee and executive bonus pools that Engel Entertainment might create and offer to its employees and executives, and that Plaintiff would be paid for all holidays honored by Engel Entertainment.

25.    Engel Entertainment honored eleven paid holidays.

26.    Over the approximately twenty-one months of the engagement, Plaintiff was compensated in the total amount of approximately $288,233.00.

***The Hallmarks of Employment That Defendants Imposed***

27.     Notwithstanding the "independent contractor" label in the written agreement, Defendants exercised employer-level control over every material aspect of Plaintiff's work throughout the engagement.

28.     From her first day, Engel Entertainment welcomed and onboarded Plaintiff as an employee would be onboarded.

29.     Jennifer Egan, Engel Entertainment's Head of Production and Operations, sent Plaintiff a "Welcome Aboard!" email on September 30, 2024, establishing a company email address for Plaintiff (cnicholas@engelentertainment.com), arranging for a company-issued laptop, and providing Plaintiff access to the company's employee calendar.

30.     Engel Entertainment provided Plaintiff with a company-issued laptop and a corporate American Express card, the use of which was governed by Engel Entertainment's directives, policies, and practices.

31.     Engel Entertainment also reimbursed vehicle rental expenses for Plaintiff's company-related travel throughout the engagement.

32.     The written agreement required Plaintiff to perform services "at such locations, and at such times, as may be required by Producer in connection with the performance of the Services." Defendants exercised that authority throughout the engagement, setting meetings, assigning tasks, directing work product, and controlling the scope of Plaintiff's responsibilities.

33.     The written agreement designated Plaintiff as the sole "Key Person" and required "the personal and timely performance" of her services, expressly stating that her personal performance was "of the essence to this Agreement."

7

34.    Plaintiff was prohibited from delegating her services to any other person without Defendants' prior written approval, which Defendants could grant or withhold in their sole discretion.

35.    As a practical matter, the scope of Plaintiff's workload necessarily required her to devote all of her professional time to Engel Entertainment's business, precluding her ability to pursue other revenue-generating client work or business development through Chroma Collective LLC. Engel Entertainment's own internal staffing records from February 2025 listed Plaintiff as working approximately five days per week in her role as Chief Business Development Officer.

36.    Plaintiff's work was integral to Engel Entertainment's core business. Her role encompassed business strategy, brand development, sponsorship and partnership creation, programming development and oversight, operational management, merchandise strategy, nonprofit framework development, and every major component of The Game Warden Channel's development and launch. The GWC launched in July 2025 with Plaintiff's work as an essential driver of that launch.

37.    In addition to her business development responsibilities, Plaintiff also led the rebranding of Engel Entertainment, including the website, company messaging, and slogan, helping to make key business decisions while working on both the short-term and long-term corporate structure, and while suggesting new revenue-generating initiatives.

38.    Plaintiff's engagement was not a discrete project but an ongoing, continuous working relationship lasting nearly two years. The written agreement's description of the scope of services expressly contemplated that it would be "periodically reviewed" and "may change based on the needs of the Producer and capabilities of the Contractor," reflecting an open-ended employment-style relationship.

39.    Plaintiff had no independent opportunity for profit or loss: her rate was fixed unilaterally by Defendants, and her sole source of compensation during the engagement was Engel Entertainment. When Plaintiff attempted to bill for additional hours she worked beyond the standard schedule, Defendants refused to pay her for this time while nevertheless requiring her to continue working and absorb that additional work without compensation.

40.    Engel Entertainment's classification of Plaintiff as a "loan-out" or independent contractor was part of a broader, deliberate company-wide policy to avoid paying employment taxes, benefits, overtime, and other legal obligations owed to employees. Engel Entertainment's internal records from February 2025 reflected multiple senior personnel, including its Chief Content Officer and Head of Casting, similarly carried as loan-outs or independent contractors without deal memos and without overtime protections.

### *Plaintiff's Routine Overtime Work Without Compensation*

41.    Throughout the engagement, Plaintiff worked five to seven days per week, with routine work in the evenings, on weekends, and during holidays, at the direction of and with the knowledge of Defendants.

42.    Multiple invoices submitted by Plaintiff to Engel Entertainment during the course of the engagement documented additional consulting hours and out-of-scope work performed at $0.00, reflecting work that Plaintiff performed but for which she was not paid.

43.    Defendants never paid Plaintiff overtime compensation of one and one-half times her regular rate of pay for any hours she worked in excess of forty hours in a workweek during her engagement.

44.    Plaintiff is owed substantial unpaid overtime wages for the nearly two years during which she worked five to seven days per week without overtime compensation, as she frequently

worked between nine hours and twelve or more hours per day, five to seven days per week, for an average of between forty-five and eighty-four hours per week.

45.     By way of example only, During the workweek of October 20, 2024 through October 26, 2024, Plaintiff worked approximately seventy-seven hours for Defendants.

46.     During that week, Plaintiff worked approximately eleven hours on Sunday, October 20, 2024; eleven hours on Monday, October 21, 2024; eleven hours on Tuesday, October 22, 2024; eleven hours on Wednesday, October 23, 2024; eleven hours on Thursday, October 24, 2024; eleven hours on Friday, October 25, 2024; and eleven hours on Saturday, October 26, 2024.

47.     For that workweek, Plaintiff worked thirty-seven hours in excess of forty hours, but Defendants did not pay Plaintiff any overtime compensation whatsoever, let alone at the rate of one and one-half times her regular rate of pay, for any of those overtime hours.

48.     This week was representative of Plaintiff's work for Defendants during the relevant period. Plaintiff regularly worked more than forty hours per week, including nights, weekends, and urgent deadline work, but Defendants willfully and unlawfully misclassified classified her as an independent contractor and failed to pay her overtime compensation.

### *Defendants' Failure to Provide Required Wage Notices and Wage Statements*

49.     At no time during the engagement did Engel Entertainment provide Plaintiff with a written wage notice at the time of hiring, as required by NYLL § 195(1). No notice was provided setting forth Plaintiff's rate of pay, basis of payment, regular pay day, the employer's name and address, or any of the other information required by the NYLL.

50.     Similarly, Engel Entertainment did not furnish Plaintiff with wage statements on each occasion when it paid her compensation, as required by NYLL § 195(3). Defendants never

10

provided Plaintiff with statements reflecting her actual hours worked, her regular rate of pay, her overtime rate of pay, her gross wages, deductions, or net wages.

51. Plaintiff suffered concrete injuries in fact due to Defendants' failure to provide her with timely and accurate wage statements on each pay day or a timely and accurate wage notice upon hire because, lacking any real documentation from Defendants that confirmed her eligibility for overtime pay, and that showed her true hours and pay, she was unable to meaningfully advocate for herself and others due to the lack of accurate information provided to her during each pay period and instead in reliance on Defendants' facially unlawful "independent contractor" agreement.

52. If Plaintiff received paystubs that accurately reflected the actual hours she worked and had worked, and if she would have been made aware upon hire that she was entitled to be paid for all hours worked over forty in a week at time and one-half her regular rate of pay, Plaintiff would have been able to advocate for herself and for her coworkers to be paid higher wages during their employment, exactly as Plaintiff did when she confronted Defendants through her written complaints about the scope of her work that led to her unlawful retaliatory termination – and just as she is now doing through this action upon independently learning of her rights to be paid overtime.

53. Indeed, because Plaintiff was not aware that she should have received compensation for all hours she worked each week, and that she should have received overtime compensation for all hours over forty, Plaintiff waited until this action before raising her wage complaints against Defendants, causing her to lose the time-value of the money she should have earned if she was accurately appraised of her total hours worked each week without receiving pay for all of those hours at the correct rates.

***Plaintiff's Good-Faith Complaints About Unpaid Wages and Defendants' Retaliatory Response***

54.     In February 2026, Plaintiff and Mr. Engel met at Engel Entertainment's New York office. At that meeting, Mr. Engel directed Plaintiff to stop charging for additional hours she had been billing to account for work beyond her standard schedule, instructing her to "Read your contract."

55.     Plaintiff complied with that instruction and ceased billing for substantial additional time she continued to perform, even as her workload remained unchanged.

56.     On April 24, 2026, Plaintiff sent to Defendant Mr. Engel a "Proposed Framework for Our Collaboration Moving Forward" via email, laying out a proposed revised compensation, commission, and revenue framework tied to The Game Warden Channel, specifically regarding if the Channel or its related digital properties were ever sold or otherwise monetized, while expressly stating that ownership of Engel Entertainment and The Game Warden Channel would remain with Engel.

57.     On or about May 1, 2026, Plaintiff formally raised, in writing, the issues of compensation structure, the expansion of her responsibilities over the course of the engagement, and Engel Entertainment's failure to conduct the six-month compensation review the written agreement required.

58.     On May 8, 2026, Plaintiff sent Mr. Engel a written Letter of Intent proposing a revised framework for the engagement, addressing compensation, the scope of services, and protections commensurate with the role she had been performing.

59.     Helen ("Heidi") Diana Reavis, Defendant Mr. Engel's wife, one of Engel Entertainment's stakeholders, and its then-outside legal counsel, was copied on that letter.

60.    On May 10, 2026, Defendant Mr. Engel responded to Plaintiff's May 8, 2026, Letter of Intent. In his response, he stated that he would like Plaintiff to continue under the existing September 30, 2024 Agreement and that the changes she proposed to her compensation structure were "not feasible."

61.    On May 11, 2026, Plaintiff sent Mr. Engel another written communication addressing the significant expansion of her role, the sustainability of the then-current structure, the compensation review contemplated under the written agreement, and the need to better align the actual scope of services and course of performance with the original agreement.

62.    When Defendants still failed to respond, Plaintiff sent yet another message on May 20, 2026, following up again on still unresolved issues that "go directly to the expanded scope of [her] role, compensation, expectations, work boundaries, protections, and the appropriate framework for continuing forward."

63.    Her intent through these four written notices was to voice a legitimate, good-faith complaint of underpayment and contract-term violations.

64.    After Defendants failed to respond to these communications, beginning on May 26, 2026, Plaintiff initiated a sustained series of written demands for payment of outstanding invoices, directed to Liz Koran Naumann, Engel Entertainment's Director of Finance.

65.    Plaintiff sent follow-up demands on May 27th, June 2nd, June 3rd, June 5th, and again on the morning of June 11, 2026.

66.    Mr. Engel was copied on the June 3rd and June 5th communications but he never responded.

67.    As of June 11, 2026, invoices totaling $9,600.00 were already past due under the agreement's fourteen-day payment schedule, with an additional $14,815.55 outstanding.

13

68.     Engel Entertainment had completely ignored all of Plaintiff's written demands, phone calls, and text messages requesting payment.

69.     On the morning of June 11, 2026, Plaintiff escalated her payment demands directly to Mr. Engel in writing, citing the agreement's payment terms and identifying the outstanding amounts.

70.     That same evening, on June 11, 2026, Mr. Engel sent Plaintiff a "wind-down" email declaring "the end of Services under our Agreement." The termination email was sent on the very same day as, and in direct response to, Plaintiff's most direct demand for the payment of her outstanding wages, amounting to clear-as-day retaliation.

71.     In his wind-down email, Mr. Engel claimed that Plaintiff had "triggered the termination of our agreement in May."

72.     This characterization was false, as Mr. Engel and Engel Entertainment had continued to receive, approve, and benefit from Plaintiff's work throughout May and into June 2026. To that end, Mr. Engel responded to Plaintiff's work product on June 3, 2026 with the message "Thanks loads. Much appreciated." He did not raise any performance concerns or dispute any continued obligation to pay in the weeks preceding the termination.

73.     Plaintiff promptly disputed the characterization of the termination in writing, stating that she had not resigned from or otherwise terminated the agreement at any point. Defendants provided no substantive response to Plaintiff's disputes.

74.     On June 15, 2026, Plaintiff responded to Defendant Mr. Engel's email, stating that his characterization of the termination was false, and making clear that she had not in fact resigned or otherwise terminated the Agreement at any point.

14

75.    On June 25, 2026, Defendants terminated Plaintiff's access to her company email account, amounting to a full and final retaliatory termination of the engagement.

76.    On June 25, 2026, immediately after Defendants terminated Plaintiff's company email access, Plaintiff wrote to Defendant Mr. Engel, requesting confirmation as to whether Defendants had in fact terminated the Agreement effective that day.

77.    In her June 25th correspondence, Plaintiff explained that the loss of access impaired her ability to complete the requested transition and wind-down work, reiterated that she had not resigned or terminated the Agreement, identified the then-outstanding unpaid balance of $25,124.24, and requested clarification regarding payment, the scope and timing of the transition, and how Defendants expected Plaintiff to complete the remaining work without access to her company email. She also confirmed that She remained willing to facilitate an orderly transition and discuss the matter directly.

78.    Defendants never responded to Plaintiff's June 25, 2026, correspondence.

79.    As of the filing of this Complaint, Defendants have failed to pay Plaintiff for services rendered since May 4, 2026. The total outstanding balance owed to Plaintiff, including invoices for services already rendered and unreimbursed expenses, is at least $30,961.73, subject to final reconciliation, without accounting for the unpaid overtime Plaintiff worked over the course of her tenure with Defendants.

80.    Defendants' unlawful acts of misclassification, wage theft, and retaliatory termination caused Plaintiff to suffer, and continue to suffer, monetary and economic damages, including but not limited to unpaid overtime wages, unpaid invoices for services rendered, lost future earnings, damage to her professional reputation and standing, and other related losses.

**FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS**
*(Unpaid Overtime: Worker Misclassification in Violation of the FLSA, 29 U.S.C. § 207(a))*

81.    Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

82.    29 U.S.C. § 207(a) requires employers to compensate their employees at a rate not less than one and one-half times their regular rate of pay for all hours worked exceeding forty in a workweek.

83.    As described above, Defendants are "employers" within the meaning of the FLSA, while Plaintiff is an "employee" within the meaning of the FLSA.

84.    As described above, each factor of the economic reality test demonstrates that Plaintiff was Defendants' employee. Defendants exercised pervasive control over Plaintiff's schedule, location, assignments, and work product; Plaintiff had no independent opportunity for profit or loss; her rate was set unilaterally by Defendants; her work was integral to Engel Entertainment's core business; and the working relationship was continuous and open-ended for nearly two years. The designation of Plaintiff as an "independent contractor" and the use of Plaintiff's LLC as a nominal contracting party do not alter the employment relationship.

85.    Plaintiff worked five to seven days per week, with routine evening, weekend, and holiday work, consistently in excess of forty hours per workweek throughout the nearly two-year engagement.

86.    Defendants never compensated Plaintiff at one and one-half times her regular rate of pay for any hours she worked in excess of forty in a workweek, in willful violation of the FLSA.

87.    Plaintiff is entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times her regular rate of pay, liquidated damages, interest, attorneys' fees, and costs for Defendants' willful violations of the FLSA's overtime provisions.

16

**SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS**
*(Unpaid Overtime: Worker Misclassification in Violation of the NYLL and the NYCRR)*

88.    Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

89.    N.Y. Lab. Law § 160 and 12 NYCRR § 142-2.2 require employers to compensate their employees at a rate not less than one and one-half times their regular rate of pay for all hours worked exceeding forty in a workweek.

90.    As described above, Plaintiff did not work at her own convenience; she was required to be available at times and locations as directed by Defendants. She was not free to engage in other employment, as the demands of the role required her to devote substantially all of her professional time to Engel Entertainment. She received fringe benefits including paid holidays, participation in employee bonus pools, company-provided equipment, and expense reimbursement. She worked at a substantially fixed daily rate of pay while working five to seven days per week.

91.    As a result, as described above, Defendants are "employers" within the meaning of the NYLL and the NYCRR, while Plaintiff is an "employee" within the meaning of the NYLL and the NYCRR.

92.    Plaintiff worked in excess of forty hours per workweek throughout her engagement, yet Defendants failed to compensate her in accordance with the NYLL's and the NYCRR's overtime provisions.

93.    Plaintiff is entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times her regular rate of pay, liquidated damages equal to 100% of unpaid wages under NYLL § 198(1-a), pre-judgment interest at the rate of nine percent per annum,

attorneys' fees, and costs for Defendants' violations of the NYLL's and NYCRR's overtime provisions.

## THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS
*(Failure to Furnish Proper Wage Notice in Violation of NYLL § 195(1))*

94.    Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

95.    NYLL § 195(1) requires that employers provide employees with a wage notice at the time of hire containing accurate, specifically enumerated information, including the rate or rates of pay, the basis of compensation, the regular pay day, the employer's name, any doing-business-as names, the employer's principal place of business address, and the employer's telephone number.

96.    As described above, Defendants are "employers" within the meaning of the NYLL, while Plaintiff is an "employee" within the meaning of the NYLL.

97.    As also described above, Defendants failed to furnish Plaintiff with any wage notice upon the commencement of the engagement, let alone one that accurately contained all of the information required under the NYLL.

98.    Pursuant to NYLL § 198(1-b), Defendants are liable to Plaintiff in the amount of $50.00 for each workday after the violation initially occurred, up to a statutory cap of $5,000.00.

## FOURTH CLAIM FOR RELIEF AGAINST DEFENDANTS
*(Failure to Furnish Proper Wage Statements in Violation of NYLL § 195(3))*

99.    Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

100.    N.Y. Lab. Law § 195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated information on each occasion when the

18

employer pays wages to the employee, including the dates of work covered, the name and address of the employer, the rate or rates of pay, gross wages, deductions, and net wages, and, for non-exempt employees, the regular hourly rate, overtime rate, and number of regular and overtime hours worked.

101. As described above, Defendants are "employers" within the meaning of the NYLL, while Plaintiff is an "employee" within the meaning of the NYLL.

102. As also described above, on each payday throughout the engagement, Defendants failed to furnish Plaintiff with accurate wage statements containing the information required under the NYLL.

103. Pursuant to NYLL § 198(1-d), Defendants are liable to Plaintiff in the amount of $250.00 for each workday that the violations occurred, up to a statutory cap of $5,000.00.

## FIFTH CLAIM FOR RELIEF AGAINST DEFENDANTS
*(Retaliation in Violation of the NYLL, NYLL § 215)*

104. Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

105. NYLL § 215(1)(a) prohibits employers from discharging or in any other manner discriminating or retaliating against any employee because such employee has made a complaint to her employer, or to any other person, that the employer has violated any provision of the NYLL, including the right to receive all wages owed in a timely manner.

106. As described above, Defendants are "employers" within the meaning of the NYLL, while Plaintiff is an "employee" within the meaning of the NYLL.

107. As described above, Plaintiff engaged in protected activity under the NYLL by repeatedly and in writing complaining to Defendants about Defendants' failure to pay her outstanding wages in accordance with the terms of their written agreement and Defendants'

19

statutory obligations. Specifically, Plaintiff sent written demands for payment of outstanding invoices on May 26th, May 27th, June 2nd, June 3rd, June 5th, and the morning of June 11th, June 15th, and June 25, 2026.

108.    Plaintiff also raised, on April 24th, May 1st, May 8th, May 11th, and May 20, 2026, written complaints regarding Defendants' failure to compensate her in accordance with the agreed-upon terms, including the failure to conduct the required six-month compensation review.

109.    Defendants retaliated against Plaintiff for engaging in this protected activity by terminating her engagement on the evening of June 11, 2026, the very same day as Plaintiff's most direct written demand for payment of her outstanding wages.

110.    Defendants' retaliatory termination was swift, proximate in time to Plaintiff's protected complaints, and unaccompanied by any legitimate business justification. Defendants had approved and benefited from Plaintiff's continued work in the days and weeks preceding the termination, and had raised no performance concerns.

111.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYLL, Plaintiff has suffered, and continues to suffer, economic losses, including lost wages, lost past and future income, and other financial harm, for which she is entitled to an award of monetary damages and other relief.

112.    As a further direct and proximate result of Defendants' retaliatory termination, Plaintiff has suffered damage to her professional reputation and career standing, for which she is entitled to an award of monetary damages.

113.    Plaintiff is also entitled to liquidated damages up to the statutory cap under NYLL § 215(2)(b), punitive damages for Defendants' willful and wanton violations of the NYLL's anti-retaliation provisions, interest, and attorneys' fees.

20

114.    Pursuant to NYLL § 215(2)(b), contemporaneous with the filing of this Complaint, Plaintiff is serving written notice on the Office of the New York State Attorney General, advising it of Plaintiff's claim for retaliation under Section 215 of the NYLL.

### SIXTH CLAIM FOR RELIEF AGAINST DEFENDANTS
*(Retaliation in Violation of New York City's Freelance Isn't Free Act,*
*NYC Admin. Code § 20-928 et seq.)*
*Asserted in the Alternative to the First through Fifth Claims for Relief*

115.    Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

116.    FIFA prohibits retaliation against a freelance worker for opposing conduct prohibited by FIFA, including the failure to pay timely compensation under the terms of a written freelance contract.

117.    As described above, and in the alternative to the claims set forth in the First and Second Claims for Relief, should it be determined that Plaintiff was indeed properly classified as an independent contractor, Defendants engaged Plaintiff pursuant to a written "Independent Contractor Agreement," which constitutes a freelance contract within the meaning of FIFA. Plaintiff was, in the alternative to her status as an employee, a "freelance worker" within the meaning of FIFA, being a natural person, or an organization composed of no more than one natural person, hired or retained as an independent contractor to provide services in exchange for compensation.

118.    Defendants are "hiring parties" within the meaning of FIFA. Engel Entertainment is based in New York City at 41 Madison Avenue, 41st Floor, New York, New York 10010. Plaintiff performed a substantial portion of her services in New York City, was hired by a New York City entity, and the enterprise she supported was centered in and operated from New York City.

21

119.    As described above, Plaintiff engaged in protected activity under FIFA by asserting her right to receive timely compensation under the written freelance contract, including through sustained written demands for payment of outstanding invoices between May 26th, May 27th, June 2nd, June 3rd, June 5th, and the morning of June 11, 2026, followed by additional written communications on June 15th and June 25th, and through her written complaints on April 24th, May 1, May 8, May 11, and May 20, 2026, regarding Defendants' failure to fulfill their compensation obligations.

120.    Defendants retaliated against Plaintiff for opposing conduct prohibited by FIFA by terminating her engagement on the evening of June 11, 2026, the same day as Plaintiff's most direct payment demand, in violation of FIFA's anti-retaliation provisions.

121.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of FIFA, Plaintiff has suffered, and continues to suffer, damages including, but not limited to, lost past and future income, compensation, and benefits, for which she is entitled to an award of monetary damages, double damages, attorneys' fees, and costs.

### SEVENTH CLAIM FOR RELIEF AGAINST DEFENDANTS
*(Violation of the Freelance Isn't Free Act, NYC Admin. Code § 20-927 et seq.)*
*Asserted in the Alternative to the First through Fifth Claims for Relief*

122.    Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

123.    In the alternative to the claims set forth in the First and Second Claims for Relief, and in the event that a factfinder determines that Plaintiff was properly classified as an independent contractor rather than an employee, Plaintiff brings this claim under FIFA.

124.    FIFA defines a "freelance worker" as any natural person, or any organization composed of no more than one natural person, whether or not incorporated or employing a trade

name, that is hired or retained as an independent contractor by a hiring party to provide services in exchange for compensation.

125.    In the alternative, Plaintiff was a "freelance worker" within the meaning of FIFA, hired and retained by Defendants as an independent contractor through Chroma Collective LLC to provide business development, brand strategy, operational, and related services in exchange for compensation.

126.    Defendants are "hiring parties" within the meaning of FIFA. As described above, Engel Entertainment maintains its principal place of business in New York City, Plaintiff performed a substantial portion of her services in New York City, and the enterprise she supported was centered in and operated from New York City.

127.    Plaintiff also had plans to remain in New York City permanently after Summer 2026, where she would work full-time in Defendants' New York City offices and remotely from her home in New York.

128.    Defendants engaged Plaintiff pursuant to a written "Independent Contractor Agreement" effective September 30, 2024, which constitutes a written freelance contract under FIFA. Pursuant to that contract, Defendants agreed to pay Plaintiff a fee of $600 per day and $3,000 per week, with payment due within fourteen days following each invoice due date.

129.    The total value of the services Plaintiff provided to Defendants under the written contract far exceeded any minimum threshold, totaling approximately $288,333.00 in compensation paid over the course of the engagement, with an additional balance of at least $30,961.73 including both unpaid compensation and unreimbursed expenses, remaining outstanding and unpaid as of the date of this Complaint.

130. Defendants violated FIFA by failing to pay Plaintiff all compensation owed to her under the written freelance contract. Defendants failed to pay at least $30,961.73 including both unpaid compensation for services and unreimbursed business expenses incurred on Engel's behalf, despite receiving and approving those services and despite Plaintiff's repeated written demands for payment. Defendants have not paid Plaintiff any compensation for services rendered since May 4, 2026.

131. As a direct and proximate result of Defendants' violations of FIFA, Plaintiff has suffered, and continues to suffer, damages including all outstanding compensation owed under the written contract, double damages as provided by FIFA, pre-judgment interest, attorneys' fees, and costs.

## DEMAND FOR JURY TRIAL

132. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

a. A judgment declaring that the practices complained of herein are unlawful and in violation of the aforementioned United States, New York State, and New York City laws;

b. Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

c. An order restraining Defendants from any further retaliation against Plaintiff for participation in any form in this litigation;

24

d.  All damages that Plaintiff has sustained as a result of Defendants' unlawful misclassification and wage theft, including all unpaid overtime wages and any shortfall between wages paid and those due under the FLSA, the NYLL, and the NYCRR;

e.  Liquidated damages equal to 100% of Plaintiff's unpaid overtime wages, plus any other statutory penalties, as recoverable under the FLSA and the NYLL;

f.  Wage notice and wage statement penalties as provided under NYLL §§ 198(1-b) and 198(1-d), up to $5,000.00 each;

g.  All damages that Plaintiff has sustained as a result of Defendants' retaliatory termination of her engagement, including lost wages, lost future earnings, and compensation for harm to her professional reputation and standing;

h.  Liquidated damages and punitive damages for Defendants' willful and wanton violations of the NYLL's anti-retaliation provisions, as provided under NYLL § 215;

i.  In the alternative to the relief sought under paragraphs (d) through (f) above, all outstanding compensation owed under the written freelance contract, and double damages thereon, as provided by FIFA;

j.  Compensatory and punitive damages for Defendants' retaliatory conduct in violation of FIFA, as provided under FIFA's anti-retaliation provisions;

k.   Pre-judgment and post-judgment interest, as provided by law;

l.  An award of Plaintiff's reasonable attorneys' fees, costs, and disbursements incurred in connection with this action, to the fullest extent permitted by law; and

m.      Such other and further relief as the Court may deem just and proper.

Dated: Deer Park, New York
       August 7, 2026

                                      Respectfully submitted,

                                      **STEVENSON MARINO LLP**

By:   _____
                                      MICHAEL R. MINKOFF, ESQ.
                                      2000 Deer Park Avenue
                                      Deer Park, New York 11729
                                      Tel.: (212) 939-7231
                                      Fax: (212) 531-6129
                                      *Attorneys for Plaintiff*